UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD C.,<br><br>  Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>  Defendant. | Case No.:  23-cv-1170-AJB-KSC<br><br>**REPORT AND RECOMMENDATION FOR AN ORDER REVIEWING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. This Court directed the parties to explore informal resolution of the matter through the meet-and-confer process, but the parties were unable to resolve the case on their own. Doc. Nos. 9, 10. Having reviewed the parties' briefing and the Administrative Record ("AR"), the Court submits this Report and Recommendation to the assigned District Judge pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b).

////

////

////

////

# I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits. AR 15.[1] The Social Security Administration denied the claim. *Id*. The Administration denied plaintiff's claim upon rehearing. *Id*. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. Plaintiff, represented by counsel, appeared before the ALJ. *Id*. Plaintiff's attorney and the ALJ both examined plaintiff at the hearing, and the ALJ received testimony from a vocational expert. *Id*. After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ ultimately concluded plaintiff was not disabled. *Id.* at 33.[2]

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant could perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 18-20. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is or is not disabled. *See* 20 C.F.R. § 404.1250(a)(4).

The ALJ first made a threshold finding plaintiff met the insured status requirements through a date last insured ("DLI") of December 31, 2021. AR 20. At step one, adopting

---

[1] All citations to "AR" are to the Administrative Record in this matter [Doc. No. 8], and are paginated accordingly. Any other citations to the Court's docket will reflect pagination assigned by the Court's CM/ECF case management system.

[2] Although plaintiff had previously been denied benefits at a prior hearing, the ALJ in this case found any presumption of continuing non-disability as a consequence of the prior administrative proceedings had been rebutted by a showing of changed circumstances. AR 16-17.

the previous administrative findings, the ALJ found plaintiff had "not engaged in substantial gainful activity since August 25, 2019," the alleged onset date. *Id.*

At step two, the ALJ found plaintiff had the following severe impairments: "thoracic spine scoliosis and degenerative disc disease; degenerative disc disease of the cervical spine with radiculopathy; obesity; chronic obstructive pulmonary disease (COPD); asthma; migraines; generalized anxiety disorder (GAD); panic disorder; major depressive disorder (MDD); bipolar II disorder; and post-traumatic stress disorder (PTSD)." *Id.* The ALJ found plaintiff had the following non-severe physical and mental impairments: "diverticulosis; possible cirrhosis of the liver; anemia; hemochromatosis; pancreatitis; colitis; hypertension; fatigue; gastroesophageal reflux disease (GERD); nicotine dependence; tinnitus; vitamin D deficiency; syncope; insomnia; dyspnea; pharyngitis; peptic ulcer; polyarthritis; and white coat syndrome." AR 21 (internal citations omitted).

At step three, the ALJ found claimant's symptoms did not meet or exceed the regulatory listings. AR 21-24. At step four, the ALJ determined plaintiff had "the residual functional capacity to perform light work," except plaintiff can "frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities . . .; occasionally kneel, crouch, stoop, balance, and crawl"; and "occasionally climb stairs and ramps." AR 24. However, plaintiff can "never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts." *Id.* Plaintiff "can have occasional concentrated exposure to atmospheric conditions" and "tolerate occasional exposure to extreme cold and vibration." *Id.* Plaintiff can "understand, carry out, and remember simple instructions, and use judgment to make simple work-related decisions" and "deal with occasional changes in a routine work setting." *Id.* The ALJ also stated plaintiff "cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas." *Id.* Finally, the ALJ found plaintiff "will be off task 10% of the workday." *Id.* Given plaintiff's RFC, the ALJ concluded plaintiff could not perform any past relevant work as a parts manager or auto mechanic. AR 31.

At step five, the ALJ found "there are jobs that exist in significant numbers in the national economy that plaintiff can perform," including "cleaner, housekeeper, marker," and "sales attendant." AR 31-32 (internal citations omitted). Accordingly, the ALJ found that the plaintiff was not disabled. AR 33. The Commissioner's decision to deny plaintiff's benefits claim became final on July 27, 2022. AR 1-3. This appeal followed.

## II. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## III. ANALYSIS OF THE COMMISSIONER'S DECISION

Plaintiff claims two errors: the ALJ did not provide clear and convincing reasons for discounting plaintiff's allegations of mental dysfunction and erroneously discounted the testimony of the plaintiff's treating therapist, Cynthia Barnett, LMFT. *See generally* Doc. No. 11 at 1-2. The Court will address both issues.

**A. Whether the ALJ failed to provide clear and convincing reasons for discounting plaintiff's allegations of mental dysfunction.**

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ

must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quotation and citation omitted). Second, if the ALJ does not find evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of those symptoms for "specific, clear, and convincing reasons." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015)). The "'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "The standard isn't whether [this] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* At the same time, the ALJ may not merely provide a summary of record evidence and a boilerplate conclusion that plaintiff's testimony is generally inconsistent with objective medical evidence. *Lambert*, 980 F.3d 1266 at 1277. Rather, the ALJ must identify specific testimony he or she finds not credible and "link that testimony to parts of the record supporting" the negative credibility assessment. *Brown-Hunter*, 806 F.3d 487.

Plaintiff alleged he suffers from depression, anxiety, PTSD, and panic attacks. AR 386. His anxiety keeps him "mostly at home" because he "can't be around people." AR 401. His anxiety limits his ability to concentrate. AR 406. He cannot handle stress. AR 407. He fears going out in public, and he has a generalized fear of "dying." *Id.* Commenting on his condition with greater specificity, plaintiff noted he cannot attend car shows, which he formerly enjoyed, because there are "too many people," which will "cause anxiety." AR 405. Thus, the gravamen of plaintiff's argument is that his mental impairments, in particular his anxiety, prevent him from interacting with people, which prevents him from working.

The ALJ noted plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms as alleged. AR 25. However, the ALJ discounted plaintiff's claims about the severity of the symptoms caused by plaintiff's mental impairments. AR 25, 28. Although the ALJ's decision is not a model of clarity, the Court

concludes the ALJ specifically cited the following evidence in support of this finding: (1) plaintiff's history of mental health treatment; (2) Dr. Theodore Swigart's examination of plaintiff; (3) plaintiff's use of an emotional support animal; (4) plaintiff's ability to engage in certain activities of daily living ("ADLs"); and (5) evidence of "normal mood and judgment and intact cognition without confusion" during "mental status exams." *See* AR 27-28 (citing AR 1226-27, 1275, 1284, 1300-08, 1450-52, 1459, 1531, 1569) AR 28 (citing AR 404, 1031, 1034, 1037, 1096, 1451, 1491, 1569). As the Court will explain, none were valid reasons to discount plaintiff's allegations.

### (1)     Plaintiff's History of Mental Health Treatment

Evidence that successful medical treatment has relieved the symptoms caused by a mental impairment may, in an appropriate case, rebut a plaintiff's allegations of disabling symptoms. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Morgan v. Comm'r*, 169 F.3d 595, 599-600 (9th Cir. 1999) (noting that a plaintiff's "mental symptoms improved with the use of medication" can be a clear and convincing reason to reject a claim of disability). Here, the ALJ concluded plaintiff's anxiety was "stable with continuous use of anxiolytic medications." AR 27 (citing AR 1459). This conclusion was based on a single observational note from an annual physical exam performed on or around August 4, 2021. *See* AR 1459-60. But a disability determination must be based on the record "as a whole." *Smith v. Kijakazi*, 14 F.4th 1108, 1112-14 (9th Cir. 2012); *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). The Court first notes that, during the same physical examination performed by the ALJ, plaintiff reported severe anxiety symptoms "nearly every day." *See* AR 1457. Thus, the record relied on by the ALJ suggests plaintiff's anxiety was stable, but also severe. The two conditions are not mutually exclusive, as a severe condition can nonetheless be "stable" if it is getting neither better nor worse. The ALJ's analysis does not account for this, and it was therefore incomplete.

Moreover, the record suggests that plaintiff's use of anti-anxiety drugs may well assuage the symptoms of an acute panic attack, but at the same time they leave him too drowsy to function normally. *See* AR 70, 408. The ALJ may have correctly concluded that

plaintiff could avoid his most severe panic attacks by taking Xanax, but that was not enough. Given the record as a whole, the ALJ also had to ascertain whether plaintiff could still work given the side effects of his medication. Accordingly, the mere fact that plaintiff could take medication is not substantial evidence tending to rebut his claims of disabling mental impairments.

### **(2)    Dr. Swigart's Examination and Report**

A contradictory medical opinion can be substantial evidence that rebuts subjective symptom testimony. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). In *Carmickle*, an ALJ rejected a plaintiff's testimony that he could "lift only 10 pounds occasionally" based on a "contradictory opinion that [plaintiff] can lift up to 10 pounds frequently." *Id.* The ALJ in this case relied on a June 2021 consultative exam performed by Dr. Theodore Swigart. *See* AR 27 (citing AR 1450-52). The ALJ noted Dr. Swigart's findings that plaintiff maintained "adequate eye contact" and "establish[ed] rapport with the examiner." *Id.* Dr. Swigart also noted plaintiff "was able to perform simple math, do serial threes and serial sevens, spell 'world' forward and backward, state the similarities of apples and oranges, name past Presidents, display common sense understandings, register 3/3 objects after five minutes, and respond appropriately to imaginary situations requiring social judgment." *Id.*

Unlike *Carmickle*, where the contradictory medical opinion directly addressed a functional limitation claimed by the plaintiff, the medical opinion at issue here does not adequately rebut the plaintiff's claims. Plaintiff in this case claims he is so crippled by anxiety that he cannot interact with the public. Whether he can count backwards by threes, remember who is or was President, or spell grade-school vocabulary words is wholly beside the point. While Dr. Swigart's medical opinion might support a finding that plaintiff is mentally capable of performing certain job duties as a matter of pure cognition, the opinion is not substantial evidence tending to rebut plaintiff's claims of debilitating panic attacks, and it was error for the ALJ to so conclude.

////

### **(3) Plaintiff's Use of an Emotional Support Animal**

Although neither party sufficiently addressed this in the briefing, and the ALJ's decision is not clear on whether the ALJ considered it favorably or unfavorably to plaintiff, the ALJ appears to have considered plaintiff's use of an emotional support animal as a factor tending to rebut plaintiff's subjective symptom testimony. *See* AR 28. A different ALJ, in plaintiff's previous hearing, questioned plaintiff about whether plaintiff's dog could accompany him to work and thereby relieve his anxiety, and a previous vocational expert opined that, at least for some jobs, having on on-site emotional support animal might be a valid option. *See* AR 81-83. However, plaintiff also testified his pet would not be capable of performing that role because she bites strangers. *See id.* Thus, to the extent the ALJ considered plaintiff's use of an emotional support animal as tending to rebut testimony that plaintiff's anxiety prevents him from working, that conclusion would not be supported by substantial evidence on this record.

### **(4)   Plaintiff's Activities of Daily Living**

Evidence related to a plaintiff's ADLs is generally of limited probative value because a plaintiff need not be confined to permanent bedrest to be deemed too disabled to work. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). As such, evidence of an ability to engage in ADLs is only probative when it is "inconsistent" with a plaintiff's testimony or where it establishes skills that can readily be transferred to the workplace. *Id.* The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (recognizing "many home activities may not be easily transferrable to a work environment").

The ALJ discounted plaintiff's testimony about his mental impairments because the ALJ concluded plaintiff's allegations were inconsistent with his activities of daily living, including "driv[ing], manag[ing] finances, and maintain[ing] a good relationship with most

of his family." AR 28. The ALJ did not explain ***how*** these ADLs were inconsistent with plaintiff's testimony or ***how*** they demonstrated transferrable job skills. A single conclusory statement declaring the existence of an inconsistency does not rise to the level of an ALJ providing a clear and convincing reason to discount plaintiff's allegations. Given the nature of plaintiff's mental impairments—that his anxiety precludes him from performing any work because he cannot interact with the public—evidence that plaintiff can sometimes drive or manage his finances (both of which can be done alone and can be skipped or paused at will to deal with unprovoked anxiety) or interact with his family (who are not the general public) is not substantial evidence supporting a conclusion that plaintiff's ADL's rebut his allegations of mental impairment.

### (5) Plaintiff's Mental Status Exams

Although an ALJ may not "insist on clear medical evidence to support each part of a" plaintiff's subjective symptom testimony, "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The ALJ in this case discounted plaintiff's testimony in part because he found it inconsistent with plaintiff's "mental status exams [that] show normal mood and judgment and intact cognition without confusion." AR 28 (citing AR 1031, 1034, 1037, 1096, 1491, 1569). Plaintiff argues the ALJ cherry-picked from the record to focus on evidence favorable to a benefits denial, choosing to focus on "notations made during hematology clinic visits, while ignoring probative primary care treatment notes, which showed . . . moderate to severe mental health evaluations." Doc. No. 11 at 6. Defendant's response is that the ALJ is not required to draft a "dissertation" as part of a benefits denial, and resolving evidentiary conflicts is a matter for the ALJ, not this Court. Doc. No. 13 at 6-7.

The Ninth Circuit has repeatedly held that an ALJ cannot cherry pick from the record by focusing on the evidence that hurts the plaintiff's case while ignoring the evidence that could support a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014); *Holohan v. Massanari*,

246 F.3d 1195, 1207 (9th Cir. 2001). As the ALJ noted, multiple hematology and pulmonology clinicians marked plaintiff down has having a normal mood and intact cognition during his clinic visits. *See* AR 1031, 1034, 1037, 1096, 1491, 1569. The ALJ characterized these observations as "mental status exams." *See* AR 28. In reality, the visits at issue concerned plaintiff's blood and lungs. *See, e.g.*, AR 1031 (noting there was "extensive discussion about the diagnosis of hemochromatosis" with no mention of psychiatric issues); AR 1096 (noting plaintiff received advice and counseling on keeping a healthy diet and/or exercising despite breathing issues). Thus, the ALJ's conclusory statement that these exams rebutted plaintiff's testimony about his mental impairments is unreasonable based on the record. Moreover, the ALJ ignored multiple medical records favorable to plaintiff.

For example, the ALJ failed to acknowledge how plaintiff's mood was described as "depressed and tearful," by Dr. Theodore Swigart, a clinical psychologist. AR 1451. Dr. Swigart stated plaintiff's "anxiety and depression symptoms appeared to have worsened over the past two years as his medical condition has worsened." AR 1452. Dr. Swigart also noted plaintiff:

> [P]resented with slowed thinking consistent with depression and feeling easily overwhelmed. He is easily irritated. He has crying episodes. He has poor sleep. He has reduced energy as well as a worrisome thinking about his health and social anxiety. He also has a history of panic attacks as well as symptoms similar to posttraumatic stress disorder mainly nightmares and intrusive images of the traumatic death of his friend that he witnessed.

*Id.* Dr. Swigart further stated plaintiff "would have mild limitations completing a normal workday or workweek due to his mental condition" and "would have moderate difficulties to be able to handle the usual stresses, changes and demands of gainful employment." AR 1453. Lastly, Dr. Swigart diagnosed plaintiff with recurrent major depressive disorder and unspecified anxiety disorder. AR 1452. The ALJ failed to note Dr. Swigart's overall impression that plaintiff's prognosis from a psychiatric standpoint was "poor." AR 1453.

The ALJ ignored psychiatric screenings that rated plaintiff's ability to interact with supervisors and coworkers or complete a normal workday without interruptions from psychologically based symptoms as "poor." *See* AR 1268-71. The ALJ failed to account for multiple office treatment records that report a long history of severe mental health symptoms, and which generally corroborate plaintiff's testimony at the hearing about the severity of his depression, anxiety, and PTSD. *See, e.g.*, AR 1239-41, 1242-45, 1274-75, 1276-78, 1278-82. The Court concludes the ALJ improperly cherry-picked evidence from the record when the ALJ concluded plaintiff's "mental status examinations" were consistent with a finding of non-disability. Because this, and all the other reasons the ALJ gave for discounting plaintiff's subjective symptom testimony, were unsupported by substantial evidence, the ALJ's decision was erroneous on this issue.

### **(B) Whether the ALJ Properly Rejected Ms. Barnett's Opinion**

Plaintiff also assigns error to the ALJ's evaluation of a report provided by plaintiff's treating therapist, Cynthia Barnett, LMFT. *See* Doc. No. 11 at 8. Plaintiff characterizes the ALJ's analysis of Ms. Barnett's opinion as non-specific, particularly because the ALJ does not identify which parts of her opinion he accepts and which parts he rejects. *Id.* at 10-11. Defendant argues the ALJ properly discharged his duties by stating generally how persuasive he found the opinion in light of the two factors of supportability and consistency. Doc. No. 13 at 8-9.

When an ALJ evaluates competing medical opinions in the administrative record, the ALJ must evaluate the persuasiveness of any medical opinions and articulate his or her assessment as to each. 20 C.F.R. § 404.1520c. In evaluating persuasiveness, an ALJ considers the medical opinions' supportability and consistency; and the ALJ may also consider the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. See 20 C.F.R. § 404.1520c(1)-(5). Although an ALJ may discuss each of the factors to be considered in his or her opinion, the regulations only require the ALJ to explain how he or she considered

the most important factors— supportability and consistency—when determining a medical opinion's persuasiveness, unless two conflicting medical opinions are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the current regulations, the ALJ's decision "to discredit any medical opinion" will be upheld if it is "supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

"Consistency" measures how consistent a medical opinion is with other evidence in the record. See 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "Supportability" is the extent to which a source presents relevant objective medical evidence and explanations to support its opinion or finding. 20 C.F.R. § 404.1520c(c)(1), 416.920c(c)(1). The ALJ did mention "consistency" and "supportability" in his evaluation of Ms. Barnett's opinion, the entirety of which is as follows:

> [In] May 2021, Cynthia Barnett, LMFT, opined that the claimant had fair ability interact appropriately with the public and a good ability to understand, remember, and carry out simple and complex instructions; maintain concentration, attention, and persistence; and perform activities within a schedule and maintain regular attendance. This opinion is somewhat persuasive. It is supported by LMFT Barnett's note indicating that the claimant's progress was maintained in treatment. However, it is not fully consistent with the claimant's testimony of trouble concentrating.

*See* AR 29. The Court concludes this assessment is ultimately inscrutable for several reasons. First, the ALJ did not explain how Ms. Barnett's "note" is a proper supportability factor because it does not facially appear to describe the credible medical information Ms. Barnett considered when forming her opinion, and the Court cannot review an assessment by the ALJ that is so conclusory and unclear. More problematically, the ALJ appears to have actually *rejected* Ms. Barnett's opinions about plaintiff's abilities to focus and concentrate, which means the ALJ thought plaintiff was *more* disabled than Ms. Barnett's opinion suggested. The ALJ ignored the parts of Ms. Barnett's opinion which suggest plaintiff's impairments may have been serious enough to preclude any engagement in substantial gainful activity: his "poor" ability to interact with coworkers and supervisors,

his "poor" ability to work without interruption, and his "poor" ability to respond to changes in a work setting. *See* AR 1270. The ALJ's assessment, therefore, implausibly ignores without explanation Ms. Barnett's assessments and is not an appropriate discharge of the obligation to assess the persuasiveness of competing medical opinions.

### (C) Whether the ALJ's Error Was Harmless

This Court's ability to assign harmlessness to an ALJ's error is severely constrained because the decision on an applicant's disability rests solely with the Social Security Administration. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015). Harmless error is therefore the exception to the rule in Social Security appeals. *See id.* The Ninth Circuit finds harmless error where the ALJ commits error, but the ALJ's decision nonetheless incorporated another, independently sufficient ground for denial of benefits. *See Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012), superseded on other grounds 20 C.F.R. § 404.1502(a). In this case, the Court has concluded the ALJ's assessment of plaintiff's testimony was not supported by substantial evidence and the evaluation of LMFT Barnett's opinion was legally insufficient. None of the ALJ's flawed analyses were supported by independent, sufficient reasoning free from error. Accordingly, the Court concludes the errors here were not harmless.

The question of disposition remains. Plaintiff suggested the decision here should be "remanded." *See* Doc. No. 11 at 14. Here, although the ALJ failed to properly assess plaintiff's subjective symptom testimony and inadequately considered the persuasiveness of Ms. Barnett's opinion, it is the agency's job, not this Court's, not make the ultimate determination on disability. The Court accordingly concludes remand for further proceedings is the appropriate remedy.

### IV. CONCLUSION AND RECOMMENDATION

The Court recommends the decision of the Commissioner be vacated and the matter remanded. On remand, the ALJ shall reconsider the record and issue a new decision consistent with this Report and Recommendation. Any objections (or responses thereto) to

this Report and Recommendation shall be filed within the time limits allowed by Federal Rule of Civil Procedure 72(b).

Dated: July 3, 2024

Hon. Karen S. Crawford
United States Magistrate Judge